## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

**GERMAN AMERICAN CAPITAL CORPORATION,**
c/o Deutsche Bank
60 Wall Street,  New York, New York 10005

       Plaintiff,

           **Case No.**_____

    **v.**

**DEAN F. MOREHOUSE,**
287 Regatta Drive
Jupiter, Florida 33477

and

**MOREHOUSE REAL ESTATE INVESTMENTS, LLC,**
Serve: AAA Corporate Services, Inc., registered agent
1620 Central Avenue, Suite 202
Cheyenne, Wyoming 82001

       Defendants.

_____

## COMPLAINT

  COMES NOW Plaintiff German American Capital Corporation ("GACC"), by and through undersigned counsel, and for its Complaint against the Defendants Dean F. Morehouse ("Morehouse") and Morehouse Real Estate Investments, LLC ("MREI") states as follows:

## PARTIES AND JURISDICTION

  1. Plaintiff GACC is a Maryland corporation with its principal place of business in New York.

  2. Defendant Morehouse is a natural person and, upon information

FRIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

and belief, a resident and domiciliary of Palm Beach County, Florida.

3.    Morehouse regularly transacts business in the State of Maryland including, but not limited to, owning and/or controlling a number of business entities that own and/or develop real property in the State of Maryland.

4.    Defendant MREI is, upon information and belief, a Wyoming limited liability company with its principal place of business in Morehouse's home in Florida.  Morehouse owns a 50% interest in MREI and controls MREI. Morehouse's wife Linda owns the remaining 50% of MREI.

5.    MREI regularly transacts business in the State of Maryland including, but not limited to, exercising control over a number of business entities that own and/or develop real property in the State of Maryland.

6.    This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 as this is a dispute between citizens of different states and the matter in controversy exceeds $75,000.00.

7.    This action concerns Morehouse's fraudulent conveyance of his interest in numerous limited liability companies to MREI.  Venue properly lies in the State of Maryland because the interests fraudulently conveyed include interests in limited liability companies that were formed and/or operate in Maryland.

## FACTUAL ALLEGATIONS

### *The Loans, Morehouse's Guaranty, And The Judgment*

8.    On or about July 11, 2005, Brampton Plantation, LLC

RIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

2

("Brampton") executed a revolving promissory note with Branch Banking and Trust Company ("BB&T") whereby BB&T agreed to allow Brampton access to up to $28,000,000.00 in credit.  The debt was evidenced by a Revolving Promissory Note (the "Revolving Note") in the amount of $21,000,000.00 and a Letter of Credit Promissory Note (the "Letter of Credit") in the amount of $7,000,000.00.

9.    Brampton obtained the Revolving Note and the Letter of Credit to finance a substantial residential real estate development in Savannah, Georgia (the "Development").

10.    Both the Revolving Note and the Letter of Credit were governed by a Loan Agreement executed by Morehouse as President of MTM Builder/Developer, Inc. ("MTM"), the manager of Brampton.  The Loan Agreement was the subject of three subsequent modification agreements.  True and correct copies of the Revolving Note, the Letter of Credit, the Loan Agreement and the modifications thereto (collectively, the "Brampton Loan") are attached as Exhibit 1 and their terms are incorporated by this reference.

11.    As President of MTM (which was the manager of Brampton) Morehouse had the ultimate authority and responsibility to oversee, manage, and control the Development.

12.    On or about July 11, 2005, Morehouse executed a Continuing Guaranty whereby he promised to personally and unconditionally guaranty the repayment of the Brampton Loan.  On March 11, 2009, Morehouse executed a

RIEDLANDER MISLER, PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

3

Reaffirmation of Continuing Guaranty and Indemnity Agreement Regarding Hazardous Materials affirming his obligation to personally and unconditionally guaranty the repayment of the Brampton Loan.  True and correct copies of both of these agreements (collectively the "Guaranty") are attached as Exhibit 2 and their terms are incorporated by this reference.

13.     Brampton failed to make the required payments on the Brampton Loan.

14.     Despite demand that he pay the sums due on the Brampton Loan, Morehouse failed to honor the Guaranty by making the required payments on the Brampton Loan.

15.     On or about June 3, 2010, BB&T filed suit against Morehouse in the United States District Court for the District of Columbia (the "District of Columbia Litigation") as a result of Morehouse's failure to perform the Guaranty.

16.     In the District of Columbia Litigation, BB&T demanded more than $24 million in damages from Morehouse.

17.     On or about March 29, 2011, BB&T sold and assigned the Brampton Loan, the Guaranty, and any claims it had against Morehouse in the District of Columbia Litigation to GACC.  Documents evidencing that assignment are attached as Exhibit 3.

18.     The District of Columbia litigation proceeded to a bench trial on November 8, 2011.  The parties submitted proposed findings of fact and

FRIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

4

conclusions of law in January, 2012.

19.   On February 14, 2013, the United States District Court for the District of Columbia entered judgment in favor of GACC, and against Morehouse, in the amount of $23,966,216.95 (the "Judgment").  A copy of the Judgment is attached as Exhibit 4.

20.   While the Judgment has since been amended, and credited as a result of a foreclosure, Morehouse presently owes in excess of $10 million on the Judgment.  To date, Morehouse has not made any effort to pay the Judgment.

### Morehouse Recognized The Need To Transfer His Assets Before A Judgment Was Entered Against Him

21.   Discovery in aid of enforcement of the Judgment has revealed that, beginning in late 2009,  Morehouse concocted, and began implementing, a scheme to fraudulently convey his assets in advance of what he knew would be a substantial judgment against him as a result of the Guaranty.  Morehouse implemented this scheme with the specific goal of frustrating and evading his creditors.

22.   The downturn in the national housing market was devastating to the Development.  Indeed, as early as 2007, Morehouse recognized that the Development was in crisis.  In a September 21, 2007, letter, Morehouse told BB&T that "the market has taken a very bad turn in the past few months" while asking BB&T to reschedule "the principal curtailment requirements for

RIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

the BB&T loan facility on the Brampton Plantation project."

23.     Morehouse's plea pursuaded BB&T to modify the Brampton Loan on September 26, 2007.  Morehouse, however, knew that he had merely bought himself some time; the collapse of the Development was inevitable.

24.     Morehouse knew that if the Development failed and Brampton defaulted, he would be required to personally pay the Brampton Loan pursuant to the Guaranty.

25.     The Development's continued financial distress led to two more loan modifications in 2009 – one executed March 11, 2009 and another executed on May 20, 2009.

26.     By mid-2009, Morehouse knew that Brampton would eventually default on the Brampton Loan.  Morehouse also knew that Brampton's default would result in him being personally liable for a debt of approximately $28 million as a result of the Guaranty.

27.     Determined to avoid losing his assets as a result of the judgment he knew was coming, Morehouse created a company he intended to use to conceal his assets.  To that end, MREI was formed as limited liability company in Wyoming on October 9, 2009.

28.     Some time thereafter, Morehouse began conveying his ownership interests in various partnerships and limited liability companies to MREI for no consideration.

FRIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

6

### *Conveyances Revealed in Discovery*

29.     The only way that GACC could discover Morehouse's fraudulent conveyance of his assets was in discovery in aid of enforcement of the Judgment.  Morehouse, however, attempted to thwart GACC's efforts by consistently refusing to reveal all of the assets he conveyed to MREI.

30.     On January 21, 2014, one of Morehouse's accountants responded to a subpoena by producing various tax records, including Schedule K-1's for a number of Morehouse's entities.  This production revealed, for the first time, concrete evidence of the comprehensive scheme Morehouse undertook to transfer his ownership interest in a number of partnerships and limited liability companies to MREI.  The conveyances revealed by the Schedule K-1's produced are described in more detail in paragraphs 31-52 below.

31.     Following MREI's formation, Morehouse allegedly conveyed away a 99.17% interest in Grace Towers, LLC ("Grace Towers").  At the time, Morehouse's capital account in Grace Towers was $2,031,946.00.

32.     MREI allegedly acquired most or all of Morehouse's interest in Grace Towers.  As a result of the conveyance from Morehouse, MREI allegedly owned a 96.8247766% interest[1] in Grace Towers as well as the value of Morehouse's entire $2,031,946.00 capital account.

---

[1] According to the 2009 Schedule K-1's produced, the total percentage owned by the entities' respective members/partners following Morehouse's conveyance of his interest to MREI was never exactly 100%.  In all but two cases, the K-1's reflected resulting total ownership of less than 100%.  The reason for these discrepancies is unclear.

FRIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

7

33.    MREI did not pay any consideration to Morehouse in exchange for his interest in Grace Towers.

34.    Following MREI's formation, Morehouse allegedly conveyed away a 33.3334% interest in Kronprindens Passage, LLC ("KP LLC").  At the time, Morehouse's capital account in KP LLC was $598,579.00.

35.    MREI allegedly acquired most or all of Morehouse's interest in KP LLC.  As a result of the conveyance from Morehouse, MREI allegedly owned a 33.1213419% interest in KP LLC as well as the value of Morehouse's entire $598,579.00 capital account.

36.    MREI did not pay any consideration to Morehouse in exchange for his interest in KP LLC.

37.    Following MREI's formation, Morehouse allegedly conveyed away an 80% interest in Hillside Partners South Carolina ("Hillside").  At the time, Morehouse's capital account in Hillside was $716,079.00.

38.    MREI allegedly acquired most or all of Morehouse's interest in Hillside.  According to Hillside's tax records, MREI allegedly owned an 85.3436123% interest in Hillside.  Hillside's tax records, however, also show that Hillside's other partner allegedly owned a 20% interest in Hillside at the same time.  Regardless, MREI also allegedly acquired a capital account with a value of $716,063.00.

39.    MREI did not pay any consideration to Morehouse in exchange for his interest in Hillside.

FRIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

40.     Following MREI's formation, Morehouse allegedly conveyed away a 49.5% interest in Beachside Associates, LLC ("Beachside").  At the time, Morehouse's capital account in Beachside was $1,129,913.00.

41.     MREI allegedly acquired most or all of Morehouse's interest in Beachside.  As a result of the conveyance from Morehouse, MREI allegedly owned a 49.6981877% interest in Beachside as well as the value of Morehouse's entire $1,129,913.00. capital account.

42.     MREI did not pay any consideration to Morehouse in exchange for his interest in Beachside.

43.     Upon information and belief, Beachside currently owns real estate in the United States Virgin Islands worth well in excess of $1 million.

44.     Following MREI's formation, Morehouse allegedly conveyed away a 77.78% interest in 50/301 Associates, LLC ("50/301").  At the time, Morehouse's capital account in 50/301was $512,862.00.

45.     MREI allegedly acquired most or all of Morehouse's interest in 50/301.  As a result of the conveyance from Morehouse, MREI allegedly obtained a 74.4919580% interest in 50/301.

46.     MREI did not pay any consideration to Morehouse in exchange for his interest in 50/301.

47.     Following MREI's formation, Morehouse allegedly conveyed away a 50% interest in Hill Sapphire, LLC ("Hill Sapphire").  At the time, Morehouse's capital account in Hill Sapphire was $1,255,591.00.

FRIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

48.     MREI allegedly acquired most or all of Morehouse's interest in Hill Sapphire.  As a result of the conveyance from Morehouse, MREI allegedly obtained a 68.9667675% interest in Hill Sapphire as well as the value of Morehouse's entire $1,255,591.00 capital account.

49.     MREI did not pay any consideration to Morehouse in exchange for his interest in Hill Sapphire.

50.     Following MREI's formation, Morehouse allegedly conveyed away a 13% interest in Presidential Corporate Center, LLC ("Presidential").  At the time, Morehouse's capital account in Presidential was $130,000.00.

51.     MREI allegedly acquired most or all of Morehouse's interest in Presidential.  As a result of the conveyance from Morehouse, MREI allegedly obtained a 34.2415604% interest in Presidential.

52.     MREI did not pay any consideration to Morehouse in exchange for his interest in Presidential.

53.     In addition to the K-1's, the documents produced by one of Morehouse's accountants included a January 17, 2011 memo that discussed the need to prepare "amended K-1's...to reflect the changes in ownership from Dean Morehouse to Morehouse Real Estate Investments, LLC during 2009."  A copy of this document is attached as Exhibit 5.

54.     According to that memo, Morehouse conveyed his interest in more than a dozen other entities: Stafford Station, LLC; Stafford Commerce Park, LLC; Mount Vernon Avenue, LLC; Brightseat Development Assoc., LLC;

FRIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

10

Inglewood Business Park VII, LLC; Presidential Group, LLC; Largo Block D Associates, LLC; Inglewood Associates, LLC; Inglewood Business Park VIII, LLC; Inglewood Business Park X, LLC; Kettering Crossing, LLC; Inglewood Business Park IX, LLC; Little Piney Run Estates, LLC; and Enterprise Associates.

55.    Upon information and belief, Morehouse did not actually consummate many of his fraudulent conveyances until 2010 or 2011.  When doing so, he attempted to backdate the transactions by executing documents indicating the "effective date" was in 2009.

56.    Upon information and belief, it was this backdating of conveyances that created the need for Morehouse's accounts to generate amended Schedule K-1's for 2009.

57.    Upon information and belief, MREI has received distributions in excess of $1 million as a result of the sale of assets that had been owned by the entities in which Morehouse had previously owned an interest.

58.    Morehouse's fraudulent conveyances were undoubtedly perpetrated with the actual intend to hinder, delay and defraud his creditors. In fact, the conveyances at issue in this Complaint were part of a larger scheme to place all of Morehouse's assets beyond the reach of creditors.  For example, Morehouse also fraudulently conveyed real estate to the Linda W. Morehouse Living Trust.

RIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

11

## *Count for Fraudulent Conveyance*

59. The allegations set forth above are restated and incorporated herein by reference.

60. Morehouse was insolvent at the time he conveyed his interests in the partnerships and limited liability companies to MREI as described above.

61. Morehouse conveyed his interests in partnerships and limited liability companies to MREI with the actual intent to wrongfully hinder, delay and evade his creditors.

62. MREI knew, or should have known, that Morehouse's conveyance of his interests in various partnerships and limited liability companies was done for the purpose of wrongfully hindering, delaying and evading his creditors.

63. MREI had knowledge of Morehouse's fraudulent intent and otherwise did not act in good faith.

64. The business interests fraudulently conveyed from Morehouse to MREI were worth millions of dollars.

65. MREI did not pay Morehouse fair consideration for any of the interests in the various partnerships and limited liability companies Morehouse conveyed to it.

66. Despite his conveyance of his interests in various partnerships and limited liability companies to MREI, Morehouse maintains control over those interests today.

67. MREI is controlled by Morehouse and/or his close family members.

RIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

68. MREI is owned by Morehouse and/or his close family members.

69. At the time Morehouse conveyed his interests in various partnerships and limited liability company to MREI, he was engaged in business transactions for which his remaining assets were unreasonably small in relation to those business transactions.

70. At the time Morehouse conveyed his interests in various partnerships and limited liability company to MREI, he believed, or reasonably should have believed, that he would incur debts beyond his ability to pay them as they became due.

71. At the time Morehouse conveyed his interests in various partnerships and limited liability company to MREI, he believed, or reasonably should have believed, that Brampton would default on the Brampton Loan.

72. At the time Morehouse conveyed his interests in various partnerships and limited liability company to MREI, he believed, or reasonably should have believed, that he would be required to perform his obligations under the Guaranty.

73. At the time Morehouse conveyed his interests in various partnerships and limited liability company to MREI, he believed, or reasonably should have believed, that he would be sued on the Guaranty.

74. Morehouse's conveyance of his interests in various partnerships and limited liability company to MREI was a fraudulent conveyance at common law and pursuant to the Maryland Uniform Fraudulent Transfer Act.

RIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

13

75. MREI has never operated for any non-fraudulent purpose. Literally every asset MREI has ever possessed was obtained as a result of a fraudulent conveyance from Morehouse.

**WHEREFORE**, GACC prays that this Court enter judgment in favor of GACC and against Morehouse and MREI:

(a) avoiding each and every conveyance of any kind that Morehouse made to MREI;

(b) requiring MREI to account for all funds it has received as a result of its ownership of any of the interests that Morehouse conveyed to it;

(c) imposing an equitable lien on MREI and all of its assets in favor of GACC in the amount of the Judgment;

(d) attaching or levying MREI and all of its assets so that the assets may be sold;

(e) appointing a receiver for MREI;

(f) entering a money judgment against MREI as necessary to compensate GACC for any loss of value in the transferred assets so as to place GACC in the same position it would have held prior to the fraudulent conveyances;

(g) enjoining Morehouse and MREI from selling, transferring, or encumbering any tangible or intangible property of any kind;

(h) awarding GACC the cost and attorneys' fees it incurs in this action; and

(i) awarding any such further relief as this Court may deem just and

RIEDLANDER MISLER PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

14

proper.

Respectfully submitted,

**FRIEDLANDER MISLER, PLLC**

By: _____
Thomas F. Murphy, Esq.
Robert E. Greenberg, Esq.
Friedlander Misler, PLLC
5335 Wisconsin Avenue, NW
Suite 600
Washington, DC  20015
(202) 872-0800
*Counsel for Plaintiff*

FRIEDLANDER MISLER, PLLC
ATTORNEYS AT LAW
5335 WISCONSIN AVE., NW
SUITE 600
WASHINGTON, DC 20015-2045

TEL. 202.872.0800

15